UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MELLISA VAZQUEZ, individually and as successor in interest to Jacob Johnston,

Plaintiffs,

v.

BAKERSFIELD POLICE DEPARTMENT, *et al.*,

Defendants.

Case No. 1:25-cv-00089-CDB

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

(Docs. 33, 34)

**Deadline – Sept. 4, 2026**

Pending before the Court is the motion of Defendants the City of Bakersfield and Officer Jay Moore for partial summary judgment. (Docs. 33, 34). Plaintiff Mellisa Vazquez, individually and as successor in interest to Jacob Johnston, filed an opposition on July 7, 2026. (Doc. 35). Defendants filed their reply on July 13, 2026. (Doc. 36).[1]

## I. Background

In connection with Defendants' motion for summary judgment, the parties filed their own separate statements of undisputed facts. *See* (Docs. 33-2, 35-1). Further, Defendants filed an improper reply to Plaintiff's responses to Defendants' separate statement of undisputed facts. *See* (Doc. 36-1). No such filing is authorized by the Local Rules. *See* Local Rule 260. Thus, the Court will not consider Defendants' arguments contained therein. In their filing, Defendants also reproduce Plaintiff's separate statement of undisputed facts and mark certain facts as "undisputed" or include evidentiary objections and argument. *See* (Doc. 36-1). Though any such filing is not

[1] Following the parties' filing of notices consenting to the jurisdiction of a U.S. magistrate judge for all purposes, on June 27, 2025, the action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 20).

contemplated by Local Rule 260, the Court will consider Defendants' responses to Plaintiff's separate statement to the limited extent that facts marked as "undisputed" by Defendants are not in material dispute by the parties. To the extent genuine, material disputes exist, the Court will look to the version of the disputed fact most favorable to Plaintiff, as the non-moving party. *See Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005).

Because Defendants seek summary judgment only as to Plaintiff's second cause of action for municipal liability, the Court limits its preliminary factual discussion to a brief overview of the incident at issue and the facts relevant to ruling on the motion.

On January 21, 2023, at approximately 9:45 p.m., Jacob Johnston was riding a bike on the sidewalk with his cousin in Bakersfield, California, enroute to another cousin's home, when they encountered a section of sidewalk that was under construction with a dirt pathway. Accordingly, they moved onto the street. A patrol vehicle driven by Defendant Jay Moore, an officer employed by the Bakersfield Police Department, swerved toward Jacob Johnston and missed him. Defendant Moore exited the vehicle and "charged" toward Jacob Johnston, "forcibly grabbed" him, "push[ed] him off his bike and slamm[ed] him onto the ground," causing Jacob Johnston's "leg to collide with the curb of the sidewalk." Jacob Johnston suffered a fracture to his leg. (Doc. 31 at 4-5). His successor in interest (Plaintiff Vazquez) alleges that Moore's actions constituted excessive force in violation of federal and state law. Plaintiff Vazquez separately contends Defendant City of Bakersfield also violated federal law under various theories of municipal liability.

## II. Standard of Law

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011); accord *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

On summary judgment, each party's position must be supported by: (1) citing to particular

portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen*, 237 F.3d at 1031. Furthermore, "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations and internal quotations omitted). The focus is on the admissibility of the evidence's contents rather than its form. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson,* 477 U.S. at 252). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation and citation omitted).

"[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving

party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## III. Discussion

Defendants move for summary judgment only as to Plaintiff's second cause of action for municipal liability. The Civil Rights Act provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must prove that the conduct complained of was committed by a person acting under color of state law and that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978).

### A. Governing Authority – Municipal Liability

Defendants argue Plaintiff fails to provide evidence sufficient to establish triable issues relating to *Monell* liability. (Doc. 33-1 at 2); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Pursuant to *Monell*, a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Instead, the local government "is subject to suit under § 1983 only 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'" *Gravelet-Blondin v. Shelton,* 728 F.3d 1086, 1096-97 (9th Cir. 2013) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). To establish a municipality's liability under *Monell*, a plaintiff "must show that (1) she was deprived of a constitutional right; (2) the [municipality] had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Harmon v. City of Pocatello*, 854 Fed. App'x 850, 854 (9th Cir. 2021) (quoting *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001)). "The

Supreme Court has made clear that policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (internal and concluding citation omitted).

Regarding a failure to train, mere negligence in a municipal entity's training of its employees is not enough. To maintain a municipal failure to train claim, the plaintiff must marshal sufficient facts that "support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* (citing *Blankenhorn v. Cnty. of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

**B. Evidence of Genuinely Disputed Material Facts**

In response to Defendants' statement of facts, Plaintiff does not dispute that, on July 29, 2025, Defendant City of Bakersfield propounded interrogatories seeking all facts supporting the Plaintiff's cause of action for municipal liability. (Doc. 35-1 at 2 ¶ 1). Plaintiff does not dispute the fact that, on October 27, 2025, she "served her interrogatory responses and set forth a litany of allegations but did not identify a single other case and/or incident which would support the existence of any sort of unconstitutional policy pattern or practice or any failure to train. Plaintiff never supplemented this response." *Id.* ¶ 2. Plaintiff disputes only that "municipal liability has to be established through other instances." *Id.* (citing *Menotti v. City of Seattle*, 409 F.3d 1113, 1147–49 (9th Cir. 2005)).

Plaintiff designated a single retained expert witness, Roger Clark, on the issue of police procedures. *Id.* at 3 ¶ 3. Plaintiff does not dispute that "each of Mr. Clark's seven [] opinions touched on Officer Moore's conduct" and that none of the opinions relate to the City's liability under *Monell*; Plaintiff again disputes only that municipal liability must be established through other instances of unconstitutional conduct apart from the events surrounding Defendant Moore's alleged excessive force. *Id.* ¶ 3. Although Plaintiff disputes that academy training, certified under

Peace Officer Standards and Training ("POST"), and Defendant Moore's training in "both the police academy and subsequently on the use of force" was "adequate," she offers no reasoning in her opposition briefing to support this contention. *Id.* at 6 ¶¶ 9-11.

Plaintiff submitted a citizen's complaint with the Bakersfield Police Department as to the January 21, 2023, incident, alleging misconduct by Defendant Moore including use of excessive force. She received a letter on June 12, 2023, from Bakersfield Police Department informing her of its findings regarding the incident. *See* (Doc. 35-2; *id.*, Ex. A). The letter is one page and states as follows: the complaint of exceeding authority under Policy 1003.3.5(u) was unfounded as it did not occur; excessive force under Policy 300 was not sustained due to insufficient evidence; use of force under Policy 300.6.1 was sustained as there was sufficient evidence to prove the allegation; and discourteous treatment of others under Policy 1003.3.2(k) was sustained as there was sufficient evidence to prove the allegation. *See id.*, Ex. A.

Relevant to the *Monell* claim at issue here, Plaintiff relies on excerpts from the deposition of eyewitness Francisco Villareal (Doc. 35-3, Ex. 1) and the expert report of Mr. Clark (*id.*, Ex. 2). While Mr. Villareal's deposition testimony sets forth facts concerning his observation of the events on January 21, 2023, he does not otherwise speak to policies, procedures, training, or ratification. *See id.*, Ex. 1. Accordingly, this evidence is of marginal value at best in relation to Defendants' motion for summary judgment.

Plaintiff summarizes Mr. Clark's opinions as follows: (1) Jacob Johnston was compliant, not aggressive, and not a threat of serious bodily injury to Defendant Moore. Thus, Moore "had no justification" to use any force against Jacob Johnston, and Moore's "excuse that the contact … was incidental and not deliberate is not accurate"; Moore "violated policy when he drove toward [Jacob Johnston]" and grabbed him and "threw him onto the hard concrete." (Doc. 35-1 at 8 ¶ 2); (2) Moore's actions demonstrate excessive and unreasonable force with "unacceptable disregard" for Jacob Johnston's life and safety, based on the force used and that Jacob Johnston was not presenting any threat. *Id.* ¶ 3; (3) Moore "utterly failed to follow [the] required methods" that police departments have trained their officers "in safe and accepted ways to contain, assess and arrest subjects in order to avoid injuries"; Moore thus was "in violation of POST standards and law (as

taught by POST)." *Id.* at 9 ¶ 4; (4) Moore's "deliberate departure from the force guidelines and unnecessarily reckless and dangerous actions, violated policy …" *Id.* at 9-10 ¶ 5; (5) taking Jacob Johnston's set of facts as true, "there was no cause for Officer Moore to tackle" Jacob Johnston, resulting in the fracture of his leg; Moore failed to "follow policy regarding force." *Id.* at 10 ¶ 6; (6) Moore's filing of a "false police report" was a "misrepresentation of the truth" and violated policy and POST training. *Id.* at 10-11 ¶ 7; and (7) Officer Mell "failed to uphold his duty to intervene and protect [Jacob Johnston] against excessive force." *Id.* at 11-12 ¶ 8.

**C. Analysis**

Here, Plaintiff fails to present any genuine dispute of material fact as to the existence of a custom, practice, or policy relating to excessive force, failure to intervene, or failure to train.

Plaintiff relies on both a "ratification" theory of liability and "failure to train" theory of liability. (Doc. 35 at 8-9). Regarding ratification, Plaintiff singularly argues that the City of Bakersfield failed to discipline Defendant Moore for the alleged use of excessive force. *Id.* at 9. Beyond this bare assertion, however, Plaintiff's argument is undeveloped. "A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citation omitted). "To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it. The policymaker must have actual knowledge of the constitutional violation and affirmatively approve of it – a failure to overrule a subordinate's actions is insufficient to support a § 1983 claim." *Id.* (citation and quotation omitted). Plaintiff identifies no facts, disputed or otherwise, to support a finding or permit the drawing of an inference that the City of Bakersfield affirmatively approved Moore's actions. Indeed, if anything, the undisputed facts reflect the City of Bakersfield did not ratify Moore's conduct given it upheld Plaintiff's citizen complaint that Moore violated a use of force policy and a policy prohibiting discourteous treatment of others (*see* Doc. 35-2; id., Ex. A).

As for the failure to train theory of liability, Plaintiff fails to adduce facts from which an inference could be drawn that the City of Bakersfield had notice from "a pattern of similar constitutional violations by untrained or unsupervised public employees" that "a particular defect in its training or supervision causes employees to violate constitutional rights." *Quinn v. Fresno*

*Cnty. Sheriff*, No. 1:10-cv-01617 LJO BAM, 2012 WL 2052162, at *15 (E.D. Cal. June 6, 2012) (relying on *Connick v. Thompson*, 563 U.S. 51, 61-63 (2011)). Plaintiff argues in conclusory fashion that Moore's conduct made the "need for more or different training for officers such as Officer Moore [] obvious." (Doc. 35 at 9). Plaintiff contends in general that "Officer Moore's inadequate training cause[d] the violation of constitutional rights of individuals such as minor Johnston." Plaintiff relatedly asserts that "policymakers were reasonably indifferent to the need for training given that Officer Moore was not adequately trained." *Id.*

As further discussed below, it is true that in a "rare" case and under a "narrow range" of circumstances, a failure to train claim may proceed without evidence of a pattern of similar violations if the training deficiency is patently obvious. *See Connick*, 563 U.S. at 63-64. Here, however, aside from conclusory arguments, Plaintiff offers no facts, and no facts from which any inference reasonably could be drawn, identifying any training deficiency or otherwise supporting the notion that any such training deficiency was obvious.

As summarized above, the opinions of Mr. Clark relate only to the incident at issue in this case. In other words, Mr. Clark does not offer any opinion about deficiencies in policies, practices, or procedures. Indeed, Mr. Clark states repeatedly that Moore failed to follow applicable guidelines but does not opine that this was due to failures of policymakers regarding the need for training. Mr. Clark opines only that Moore himself failed to follow policies and practices. Mr. Clark states that Moore "utterly failed to follow [the] required methods" that police departments have trained their officers "in safe and accepted ways to contain, assess and arrest subjects in order to avoid injuries" and Moore thus was "in violation of POST standards and law (as taught by POST)." (Doc. 35-1 at 9 ¶ 4). Even taking Mr. Clark's opinions in the light most favorable to Plaintiff, none of those opinions relates to any failure to train.

The same is true for Mr. Clark's opinions that Moore's "deliberate departure from the force guidelines and unnecessarily reckless and dangerous actions, violated policy …"; or that "there was no cause for Officer Moore to tackle" Jacob Johnston, resulting in the fracture of his leg, and Moore failed to "follow policy regarding force"; or that Moore's filing of a "false police report" was a "misrepresentation of the truth" and violated policy and POST training. *Id.* at 9-10 ¶ 5; 10 ¶ 6; 10-

11 ¶ 7.

Separately, Plaintiff contends that the City of Bakersfield's policies were the driving force behind the alleged unconstitutional conduct. (Doc. 35 at 7-8). Plaintiff concedes that she is "not pointing to other similar instances" but "can use the instance with minor Johnston." Plaintiff asserts that the City of Bakersfield's "standard operating procedure" was to violate the constitutional rights of members of the public. *Id.* at 8. But she does not cite to any policy or procedure of the City of Bakersfield, nor does she identify facts for the proposition that a practice was so widespread it amounted to a de facto policy. Indeed, Plaintiff provides no further argument in support of this claim.

Taken in total, Plaintiff argues that this single incident should, by itself, present a question of fact for the jury regarding claims of municipal liability. "In limited circumstances, a government's failure to train may rise to the level of an official policy, but municipal 'culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Perez v. City of Fresno*, 591 F. Supp. 3d 725, 766 (E.D. Cal. 2022), *aff'd*, 98 F.4th 919 (9th Cir. 2024) (quoting *Connick*, 563 U.S.at 61). "However, although 'rare,' 'in a narrow range of circumstances,' a pattern of similar violations may not be necessary where violations of constitutional rights are patently obvious or the 'highly predictable consequence' of a failure to train." *Id.* (citing *Connick*, 563 U.S. at 63). But "an inadequate training policy itself cannot be inferred from a single incident." *Id.* at 768 (citing cases and finding that "[b]ecause Plaintiffs have not presented sufficient evidence that demonstrates deliberately indifferent training, summary judgment in favor of the County on Plaintiffs' *Monell* claim is appropriate").

The case of *Kong Meng Xiong v. City of Merced* is instructive. *See Kong Meng Xiong v. City of Merced*, No. 1:13-cv-00083-SKO, 2015 WL 4598861 (E.D. Cal. July 29, 2015). In *Xiong,* the plaintiff alleged that two officers responded to a call reporting an individual displaying a gun at a residence. While standing in front of the residence, the officers heard a noise they believed to be the racking of a semi-automatic handgun from the area of the home. Plaintiff then exited the side gate of the home and walked toward the sidewalk. The officers immediately drew their firearms, illuminated plaintiff with their flashlights, and yelled for plaintiff to raise his hands. The

officers neither announced their presence nor warned that they would shoot if their commands were not followed. Plaintiff did not fit the description of the person who reportedly had exhibited a weapon. *Id.* at *4. Plaintiff was unsure of who the officers were, became scared, and turned to run away. Plaintiff had a firearm tucked in his waistband but made no motion to reach for it. The officers opened fire on plaintiff, hitting him in the leg. The officers also struck two individuals behind plaintiff, including one fatally. *Id.* The court found disputed facts prevented the grant of summary judgment, including regarding the racking sound allegedly heard by officers and whether plaintiff removed the gun from his waistband and pointed it in the direction of the officers. *Id.* at *18-19.

As to municipal liability, the court found as follows:

> In this case, even if [Officers] Chavez and Lodwick's actions amount to a constitutional violation, Kong has failed to establish a genuine disputed issue of material fact regarding the existence of a policy of inadequate training. Defendants have presented evidence of Merced's training and policies regarding use of excessive force by its officers. The nature and scope of the training of Officers Chavez, Lodwick, Court, and Deliman is undisputed by Kong. Kong argues only that, while the officers' training may be "robust," it "was certainly per se inadequate given the actions taken against [Kong]." This is precisely the type of single-incident conduct of a non-policy making employee that fails to establish a custom or policy of the municipality.

*Id.* at *28 (citation omitted).

The facts in *Xiong* arguably present a stronger showing regarding a single incident to support a claim of municipal liability than the incident here. In *Xiong*, the undisputed facts were that a bystander was killed by the officers' gunfire, another bystander was seriously injured, and plaintiff was shot in the leg. The officers allegedly fired their weapons in the direction of plaintiff despite strong indicators that other individuals stood some distance behind plaintiff and may be caught in the gunfire. Nonetheless, the court found that the plaintiff failed to establish a genuine, disputed issue of material fact regarding the existence of a policy of inadequate training from this single incident.

Here, Plaintiff offers no evidence in support of her claims of municipal liability. Defendants have presented evidence of the City of Bakersfield's training and policies regarding use of force as

to its officers. Defendants assert that the Bakersfield Police Department used policies developed by Lexipol, a commercial company that provides policies and procedures for police departments in California, and trained to the standards set by the Peace Officer Standards and Training ("POST"). These policies include Policy 300, which relates to the use of force. (Doc. 33-1 at 3). Defendants assert that Defendant Moore had completed the POST-certified academy. (Doc. 33-1 at 4). Defendants attach in support the declaration of Lieutenant Francisco Esguerra of the Bakersfield Police Department, setting forth the same. (Doc. 33-5). Officer Esguerra attaches to his declaration a copy of Policy 300. *Id.*, Ex. A. Plaintiff does not dispute these assertions. *See* (Doc. 35-1 at 3-6).

Accordingly, Plaintiffs' municipal liability claims against the City of Bakersfield for ratification; unconstitutional custom, practice, or policy; and failure to train fail. *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (plaintiff cannot demonstrate the existence of a policy based on a single occurrence of unconstitutional action committed by a non-policymaking employee); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (same for failure to train theory); *see also Hutton v. City of Berkeley Police Dep't*, No. 13-cv-03407-JCS, 2014 WL 4674295, at *14 (N.D. Cal. Sept. 9, 2014) ("In this case, Plaintiff has not offered any evidence showing a pattern of constitutional violations. Rather, the only evidence in the record relates to the alleged unconstitutional acts in this case. Such evidence does not suffice to establish *Monell* liability.").

## **IV. Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment (Doc. 33) is GRANTED.
2. Summary judgment SHALL be entered in favor of Defendant City of Bakersfield as to Plaintiff's second cause of action for municipal liability.

///

3. The pretrial conference is confirmed for October 7, 2026, at 10:30 a.m. (*see* Doc. 28).

4. No later than September 4, 2026, the parties SHALL meet and confer and thereafter file a joint report indicating whether they request the setting of a settlement conference before an unassigned magistrate judge of this Court.

IT IS SO ORDERED.

Dated: **August 21, 2026**

UNITED STATES MAGISTRATE JUDGE